**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-02575-WJM

DAVID B. HOECK,

      Applicant,

v.

RAE TIMME, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, David B. Hoeck, has filed *pro se* an Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his criminal conviction

in the District Court of Mesa County, Colorado.  Respondents have filed an Answer

(ECF No. 19), and Applicant has filed a Reply (ECF No. 21).  Having considered the

same, along with the state court record, the Court will deny the Application.

## I.  BACKGROUND

On July 18, 2008, Mr. Hoeck was convicted by a jury of possession of a

scheduled II controlled substance (cocaine) with intent to distribute in Mesa County

District Court Case No. 07CR1572.  (ECF No. 12-1, at 8).  He was sentenced the same

day to an eighteen-year prison term with the Colorado Department of Corrections.  (*Id.*

at 7-8).

The Colorado Court of Appeals affirmed Mr. Hoeck's conviction on direct appeal

in *People v. Hoeck* (*Hoeck I*)*,* No. 08CA1829 (Colo. App. Dec. 10, 2009) (unpublished

decision).  (ECF No. 12-4).   The state appellate court summarized the relevant facts as

follows:

> Officers were dispatched to [Applicant's] house based on a report from neighbors of a verbal disturbance. As the officers approached the house, they heard two men arguing inside. Once inside the fence surrounding the house, the officers could hear without any listening device that the conversation involved narcotics. One of the officers, Officer R., recorded approximately ten minutes of the conversation with a portable tape recorder. In the recording, [Applicant] made the following statements:
>
> • "I sell for a hundred a gram and . . . eight balls for a buck 50."
>
> • "If they come here and that's my customer, they're mine."
>
> • "I will never sell to your customers."
>
> • "[Selling drugs to customers is] what pays for my bills."
>
> The officers then took the recording to the street crimes unit. After reviewing the recording, an officer with that unit obtained a no-knock search warrant for [Applicant's] house. The next morning, officers executed the warrant. [Applicant] and his roommate were at home and were subsequently arrested.
>
> The officers seized numerous items of drug paraphernalia throughout the house and in the trash can outside. Although many of the items seized contained only residue amounts of a substance which tested positive for cocaine, a bag was found in the trash can outside [Applicant's] house containing .03 grams of cocaine and a measuring cup containing .02 grams of cocaine was found near the bed in [Applicant's] roommate's bedroom.

(ECF No. 12, at 2-3).  The Colorado Supreme Court denied Applicant's request for

certiorari review on April 5, 2010.  (ECF No. 12-6).

Mr. Hoeck filed a motion for sentence reconsideration on August 18, 2010, which

the trial court denied on August 24, 2010.  (ECF No. 12-1, at 6).  Applicant did not file

an appeal.

Mr. Hoeck filed a motion for post-conviction relief pursuant to Colo. R. Civ. P. 35(c) on April 6, 2011, which was denied by the trial court. (*Id.* at 6). The Colorado Court of Appeals affirmed the trial court's order in *People v. Hoeck* (*Hoeck II*), 11CA1057 (Colo. App. Dec. 13, 2012) (unpublished). (ECF No. 12-9). The Colorado Supreme Court denied certiorari review on August 26, 2013. (ECF No. 12-11).

Mr. Hoeck initiated this action on September 19, 2013. He asserts the following claims in the Application:

> (1) the trial court's failure to suppress the taped conversation between Applicant and his roommate violated Applicant's constitutional rights and the [Colorado] wiretapping and eavesdropping act (ECF No. 1, at 2-3);
>
> (2) the evidence was insufficient to support Applicant's conviction (*id.* at 4);
>
> (3) the trial court abused its discretion by allowing a prosecution witness to opine about what quantity of drugs constitutes a distributable amount (*id.* at 5);
>
> (4) the trial court abused its discretion by imposing an aggravated range sentence (*id.* at 6);
>
> (5) the no-knock warrant was not supported by reasonable justification, in violation of the Fourth Amendment (*id.* at 6);
>
> (6) trial counsel committed numerous errors that cumulatively constituted ineffective assistance of counsel, by failing to: (a) properly investigate and prepare for trial; (b) interview and call critical alibi witnesses; (c) investigate Applicant's competency; (d) explore other viable defenses; (e) keep Applicant apprised of the case; (f) consult with an expert witness concerning Applicant's mental condition; (g) adequately litigate a motion to suppress; (h) have the drugs independently weighed and tested; and, (i) have an expert analyze the recording of Applicant's conversation with his roommate (*id.* at 7-8);
>
> (7) trial counsel was ineffective by failing to adequately litigate a Fourth Amendment claim (*id.* at 8-11);
>
> (8) trial counsel was ineffective by failing to investigate Applicant's competency (*id.* at 11-13);

(9) trial counsel was ineffective by failing to consult with expert witnesses concerning Applicant's competency (*id.* at 13-14);

(10) trial counsel was ineffective by failing to have the drugs independently weighed and tested (*id.* at 15);

(11) trial counsel was ineffective by failing to have an expert review the recording of Applicant's conversation with his roommate (*id.*);

(12) trial counsel was ineffective by failing to explore other viable defenses (*id.* at 15-17);

(13) trial counsel was ineffective by failing to apprise Applicant of the progress of the case (*id.* at 17-18);

(14) trial counsel was ineffective by failing to interview and present character witnesses at the sentencing hearing (*id.* at 18);

(15) the trial court's Fourth Amendment findings and conclusions constituted an abuse of discretion (*id.* at 18-20);

(16) the trial court abused its discretion by failing to have Applicant's competency evaluated (*id.* at 20);

(17) the trial court abused its sentencing discretion by imposing different sentences on Applicant and the co-defendant (*id.* at 20-21); and,

(18) counsel was ineffective due to a conflict of interest regarding applicant's religious beliefs (*id.* at 21).

On October 16, 2013, Magistrate Judge Boyd N. Boland ordered Respondents to file a preliminary response addressing the affirmative defenses of timeliness and exhaustion of state court remedies. In the preliminary response, Respondents conceded that the Application was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). (ECF No. 12, at 4-4). Respondents further conceded that Mr. Hoeck exhausted state remedies for part of claim 1, claims 2, 5, 6, part of claim 7, claim 9, part of claim 10, part of claim 11, and part of claim 12. Respondents argued, however, that Applicant did not exhaust state court remedies for claims 8 and 14

4

because he failed to present those claims to the Colorado Supreme Court in a petition for certiorari review. Respondents also contended that the remainder of Mr. Hoeck's claims were procedurally defaulted and that some of the claims presented issues of state law only that were not remediable under 28 U.S.C. § 2254.

In a previous Order, the Court dismissed the following claims for failure to present federal issues cognizable under § 2254: the allegations in claim 1 challenging the trial court's failure to suppress the taped conversations between Applicant and his roommate as a violation of the Colorado wiretapping and eavesdropping act; claim 3; and, claim 4. The Court also dismissed claims 16 and 17 as procedurally barred. The Court ordered Respondents to file an Answer, within thirty (30) days, to the exhausted claims (part of claim 1, claims 2, 5, 6, part of claim 7, claims 8 and 9, part of claim 10, part of claim 11, part of claim 12 and claims 13, 14 and 15) and to address whether the unexhausted ineffective assistance of counsel allegations in the remainder of claims 7, 10, 11, and 12, and in claim 18, have substantial merit under *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012). The Court addresses Applicant's remaining claims below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court

at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule

6

that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

7

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

8

definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle Applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

## A.  Claims One and Fifteen

Remaining for merits disposition is Applicant's allegation in claim one that the trial court's failure to suppress the taped conversations between Applicant and his

roommate violated the Fourth Amendment.  In claim fifteen, Applicant challenges the trial court's Fourth Amendment findings and conclusions in denying his motion to suppress.

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  In *Stone*, the Supreme Court limited federal habeas review for alleged Fourth Amendment violations based on the Court's determination that any additional contribution gained from consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the associated costs.  428 U.S. at 493-94.  The Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494.

The Supreme Court has not defined precisely the phrase "opportunity for full and fair litigation." *See Gamble v. State of Oklahoma*, 583 F.2d 1161, 1164 (10th Cir. 1978). In *Gamble*, the Tenth Circuit determined that the phrase:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.  It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].  Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

*Id.* at 1165.  "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply the

correct and controlling constitutional standards." *Id.*

The Fourth Amendment does not protect "[t]he risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals." *Hoffa v. United States*, 385 U.S. 293, 303 (1966) (internal quotation omitted). This is because such a risk "is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." *Id. See also Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). Thus, "when a law enforcement officer is able to detect something by utilization of one or more his senses while lawfully present at the vantage point where those senses are used, that detection does not constitute a 'search' within the meaning of the Fourth Amendment." 1 W. LaFave, *Search and Seizures: A Treatise on the Fourth Amendment* § 2.2, p.395 (3d ed. 1996). *See also United States v. Llanes,* 398 F.2d 880, 884 (2nd Cir. 1968) (rejecting defendant's argument that officer who stationed himself in apartment hallway and eavesdropped on defendant's conversation violated his right to privacy; "conversations carried on in a tone of voice quite audible to a person standing outside the home are conversations knowingly exposed to the public"). *Accord United States v. Hessling,* 845 F.2d 617, 629 (6th Cir. 1988) (recognizing that "there is no reasonable expectation of privacy in a conversation that can be heard without the assistance of an artificial device," and affirming district court's refusal to suppress testimony about conversations overheard through common door between adjoining motel rooms); *United States v. Burns,* 624 F.2d 95, 100 (10th Cir. 1980) (holding that officer's unaided eavesdropping outside of motel room's hallway door did not violate the

Fourth Amendment; "to the extent [the occupants of a motel room] converse in a fashion insensitive to the public, or semipublic, nature of walkways adjoining such rooms, reasonable expectations of privacy are correspondingly lessened.").

In this case, Applicant filed a motion to suppress the tape-recorded conversation. (State Court R., Court File, at 27-28).  Following a hearing, the trial court denied the motion, finding that Applicant had no legitimate expectation of privacy in the conversation with his roommate because he was speaking loudly enough that persons outside his home could easily hear what he and his roommate were arguing about. (2/1/08 Hrg. Tr., at 82-84).

On appeal, the Colorado Court of Appeals applied the following Fourth Amendment principles:

> In determining whether the Fourth Amendment warrant requirement applies, the threshold issue is whether a particular governmental activity is a "search" within the meaning of the Fourth Amendment. Its applicability depends on whether the person invoking its protection can claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by governmental action. *People v. Hart*, 787 P.2d 186, 187 (Colo. App. 1989).

> "[W]hen a police officer overhears a conversation without the aid of any listening device, from a vantage point at which he is legally present, the officer's use of his sense of hearing does not constitute a Fourth Amendment search." *Id.*

(*Hoeck I*, ECF No. 12-4, at 5).

The state appellate court found that the following evidence presented at the suppression hearing supported the trial court's finding that Applicant had no reasonable expectation of privacy in his conversation with his roommate:

> One of the officers who responded to [Applicant's] house [Officer Valdez] testified at the suppression hearing that (1) he approached

12

[Applicant's] house in response to a report of a verbal disturbance from that residence; (2) as he approached, he could hear the conversation from the corner of the driveway, approximately twenty-five yards from [Applicant's] house; (3) the gate to the fence in the front yard was open; (4) as he approached the front door, he heard that the conversation involved narcotics and was an "argument about customers"; and (5) Officer R[ojo] recorded the conversation from the porch eight to ten feet from the window while keeping the recording device close to his body. Thus, the officers were legally on [Applicant's] property and were able to hear the conversation outside the house clearly and unassisted by any artificial listening device. Accordingly, [Applicant] had no reasonable expectation of privacy with regard to the conversation. *See Hart*, 787 P.2d at 187 (no reasonable expectation of privacy exists in a conversation that can be heard without the assistance of an artificial listening device); *see also* [*Llanes*, 398 F.2d [at] 884]; *United States v. Jackson*, 588 F.2d 1046, 1054 (5th Cir. 1979)(defendant in his motel room "assumed the risk of being overheard by an eavesdropper and therefore had no justifiable expectation of privacy as to their criminal conversations").

(*Id.* at 6-7; *see also* State Court R., 2/1/08 Hrg. Tr.).

The Colorado Court of Appeals' factual findings, which are supported by the record of the suppression hearing, are presumed correct.  Applicant bears the burden to refute the findings with clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Applicant asserts in his Reply that the state appellate court's factual finding that "Officer R. recorded the conversation from the porch eight to ten feet from the window while keeping the recording device close to his body" is contrary to Officer Rojo's statements in his police report. (ECF No. 21, at 2).  It is unclear from the state court record whether the trial court considered Officer Rojo's police report in ruling on the motion to suppress. The federal habeas court does not consider information that was not presented to the state courts.  *See Cullen*, 131 S.Ct. at 1398.  To the extent the state trial court considered the non-testifying officer's police report in deciding that the Fourth Amendment was not implicated by the tape recording, there is nothing in that report to

clearly contradict the state appellate court's factual findings.  (*See* ECF No. 1-6, at 1).

Officer Rojo states only that Officer Valdez "motioned for [him] to bring [the digital voice

recorder] closer to the window, which [he] did." (*Id.*).  In any event, Officer Rojo could

hear the conversation without the aid of any listening device (*id.*), which was consistent

with the testimony of Officer Valdez at the suppression hearing.

The Court finds that the state court proceedings sufficed to provide Applicant with

an opportunity for full and fair litigation of his claim.  *See Smallwood v. Gibson*, 191 F.3d

1257, 1265 (10th Cir.1999) (holding that petitioner was not entitled to habeas review of

Fourth Amendment claim where petitioner's trial counsel informed the trial court of the

factual basis for a Fourth Amendment claim, appellate counsel presented the issue to

the state appellate court on direct appeal, and the state courts "thoughtfully considered

the facts underlying petitioner's Fourth Amendment claim" but rejected it on the merits

by applying appropriate Supreme Court precedents).  The state courts relied on Fourth

Amendment precedent in resolving Applicant's claim through federal and state case law

applying constitutional standards.  *See* State Court R., 2/1/08 Hrg. Tr., at 28 (citing

*People v. Terrazas-Urquidi,* 172 P.3d 453 (Colo. 2007) (citing Fourth Amendment

principles and *People v. Spies*, 615 P.2d 710, 712 (Colo. 1980), citing *Rakas v. Illinois*,

439 U.S. 128 (1978), for the proposition that critical inquiry under Fourth Amendment is

whether the defendant had a legitimate expectation of privacy in the invaded place); *see

also Hoeck I* (ECF No. 12-4, at 6-7)  (citing federal and state case law, including *Hart*,

787 P.2d at 187 (citing *Smith v. Maryland*, 442 U.S. 735 (1979) (recognizing that the

applicability of the Fourth Amendment depends on "whether the person invoking its

protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy'

that has been invaded by governmental action.") (internal citations omitted)). Claims One and Fifteen will be dismissed.

**B.     Claim Two**

For his second claim, Applicant asserts that the evidence was insufficient to support his conviction because the prosecution "failed to present any evidence that he possessed a distributable amount of cocaine or any evidence from which the jury could infer that he intended to distribute the .02 or .03 gram of cocaine substance found in his home." (ECF No. 1, at 4).

A constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in the original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).  A federal habeas court's review under *Jackson* is "sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quotations and alterations omitted).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of

15

reason."' *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In applying *Jackson*, the Court looks to state law to determine the substantive elements of the offense. *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004).

The Colorado Court of Appeals applied a state law standard similar to the *Jackson* standard (ECF No. 12-4, at 10), and rejected Applicant's claim on the following grounds:

> Section 18-18-405(1)(a) & (2)(a)(I)(A), C.R.S. 2009, provide that "it is unlawful for any person knowingly to . . . possess, or to possess with intent to . . . distribute a controlled substance" and that "any person who violates any of the provisions of subsection (1) . . . commits . . . [a] class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II." Cocaine is a schedule II controlled substance. § 18-18-204(2)(a)(IV), C.R.S. 2009.
>
> We conclude the evidence sufficiently supports the jury's verdict because, despite the small quantity involved, (1) it was undisputed [Applicant] possessed .05 grams of cocaine; (2) [Applicant's] roommate testified at trial the voices on the recording were his and [Applicant's]; (3) [Applicant's] statements in the recording indicated his intent to sell cocaine; and (4) the officers seized numerous items commonly used in distributing narcotics, including coin baggies, digital scales, a crack pipe, straight razors, pieces of paper with lists of phone numbers, and various items containing cocaine residue found throughout [Applicant's] residence. *Cf. Richardson v. People*, 25 P.3d 54, 55 (Colo. 2001)("if the amount of controlled substance that the defendant allegedly possessed is less than a usable quantity, then the People must produce other evidence supporting an inference that the defendant knew he possessed the substance").
>
> Moreover, the trial court instructed the jury on the lesser included offense of possession of a schedule II controlled substance, which the jury implicitly rejected in finding [Applicant] guilty of possession with intent to distribute.
>
> We therefore conclude the evidence was sufficient to support

[Applicant's] conviction.

(*Hoeck I,* ECF No. 12-4, at 10-12).

Applicant does not point to any clear and convincing evidence to rebut the state court's factual findings which are presumed correct and are supported by the state court record. (State Court R., 7/16/08 and 7/17/08 Trial Tr.). Instead, he argues that the .02 gram found in a measuring cup and the .03 gram found in a trash can outside his home were not distributable amounts of cocaine. (ECF No. 1, at 4). However, the prosecution's expert witness in drug investigations, drug terminology, and distribution quantities, testified that any amount of a drug that is distributed to someone else is a distributable amount and what is a usable amount depends on the needs of a specific user. (State Court R., 7/17/08 Trial Tr., at 103, 113-14, 132). Furthermore, the jury did not base its verdict solely on the amount of cocaine found in Applicant's home. The evidence also included baggies containing residual amounts of cocaine and the drug paraphernalia seized by police officers during a search of the Applicant's residence, Applicant's statements to his roommate during the tape-recorded conversation in which he expressed his intent to sell cocaine, and the expert's opinion, based on the tape-recorded conversation, that Applicant was involved in distributing cocaine (*id.* at 117). Viewed in the light most favorable to the prosecution, the totality of the evidence supported the jury's conclusion beyond a reasonable doubt that Applicant possessed with intent to distribute a Schedule II controlled substance – cocaine. The Court thus finds that the state appellate court reasonably applied the *Jackson* standard in determining that there was sufficient evidence presented at Applicant's trial to support his conviction. Applicant cannot prevail on his second claim.

## C.  Claim 5

In claim five, Applicant asserts that the no-knock warrant was not supported by reasonable justification, in violation of the Fourth Amendment.  Specifically, he maintains that the officer's statement concerning Applicant's violent criminal history was false and unsubstantiated, and that a no-knock entry was not justifiable solely on the basis that drug evidence may be destroyed if the officers were required to knock and announce their presence.  (ECF No. 1, at 6-7).

The "'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995).  "In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).  "This showing is not high." *Id.*  "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant." *Hudson v. Michigan*, 547 U.S. 586, 594 (2006).  As such, "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified," *id.* at 599, and "the exclusionary rule is inapplicable." *Id.* at 594.

Again, Applicant may not obtain relief from this federal habeas court if the State provided him with an opportunity for full and fair litigation of the Fourth Amendment claim.  *Stone*, 428 U.S. at 494.

Before trial, Applicant filed motion to suppress the evidence seized from his home pursuant to a search warrant on the ground that there was insufficient evidence to

establish the reasonable suspicion necessary to justify a "no knock" entry into his

residence.  (State Court R., Court File, at 40-42).  The trial court denied the motion,

concluding that the affidavit in support of the search warrant was supported by probable

cause and that there were sufficient exigent circumstances to support the no-knock

authorization, based on specific factual allegations in the affidavit to indicate that police

officers might reasonably be in danger if they were to knock and announce their

presence before entering Applicant's home.  (*Id.* at 108-111).

In *Hoeck I*, the Colorado Court of Appeals analyzed Applicant's claim as follows:

> Generally, the Fourth Amendment requires law enforcement officers to knock and announce their presence when executing a warrant. *People v. Russom*, 107 P.3d 986, 991 (Colo. App. 2004). "To justify a no-knock entry, the police must have an objectively reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile or that it would inhibit the effective investigation of a crime by, for example, allowing the destruction of evidence." *Id.* at 990-91. The showing required for no-knock authorization is not high. *Id.* at 990.

> Because the warrant alleged specific facts indicating the officers might reasonably be in danger if they were required to knock and announce their entry and the drug evidence involved could be easily destroyed or hidden, we conclude there were sufficient exigent circumstances to justify the no-knock authorization. The affidavit alleged (1) [Applicant] had an outstanding warrant from Illinois with an associated caution he was "armed and dangerous"; (2) [Applicant] had an extensive criminal history including aggravated battery, battery to a police officer, resisting and obstructing a police officer, and narcotics offenses; (3) [Applicant's] roommate had a felony no bond warrant indicating he absconded from the Department of Youth Corrections while on parole; and (4) there was reason to believe that, based on the audio recording of defendant's conversation with his roommate, both [Applicant] and his roommate were selling cocaine and possibly marijuana inside [Applicant's] house.

> Moreover, violation of the knock-and-announce rule does not require exclusion of the evidence seized. *See Hudson v. Michigan*, 547 U.S. 586, 594 (2006) ("What the knock-and-announce rule has never

protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant.").

We therefore conclude the trial court did not err in declining to suppress evidence obtained as a result of the no-knock warrant.

(ECF No. 12-4, at 8-10).

Applicant does not challenge the legality of the search warrant, only the justification for the no-knock entry.  The Court finds that Applicant was afforded a "procedural opportunity to raise or otherwise present" his Fourth Amendment claim in the state trial and appellate courts, and that the state courts recognized and made a colorable application of the correct Fourth Amendment standards–*i.e.*, *Hudson*– in refusing to suppress the evidence seized pursuant to the search warrant.  *See Gamble*, 583 F.2d at 1165.  Accordingly, claim five will be dismissed.

## D.  Claim 6

In claim six, Applicant contends that defense counsel committed numerous errors that cumulatively constituted ineffective assistance of counsel.  Specifically, counsel failed to: (a) properly investigate and prepare for trial; (b) interview and call critical alibi witnesses; (c) investigate Applicant's competency; (d) explore other viable defenses; (e) keep Applicant apprised of the case; (f) consult with an expert witness concerning Applicant's mental condition; (g) adequately litigate a motion to suppress; (h) have the drugs independently weighed and tested; and (i) have an expert analyze the recording of Applicant's conversation with his roommate.

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002)

(quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470). On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors. *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Circuit Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1). See *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012). The Tenth Circuit has indicated, however, that in the context of ineffective-assistance claims, "for AEDPA purposes, the cumulative-error inquiry is clearly established federal law. *Id.*; *see also Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]lthough we have never expressly held . . . that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases). This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.

In Applicant's state post-conviction proceeding, the Colorado Court of Appeals rejected the claim of cumulative error on the ground that "[n]one of [Applicant's] many contentions of error rise to the level of reversible error, either separately or cumulatively." (ECF No. 12-9, at 15).

As discussed, *infra*, this Court has applied the AEDPA standard of review to each of the ineffective assistance of counsel claims that form the basis of Applicant's

cumulative error claim (claims 7-14) and has concluded that the Colorado Court of Appeals' resolution of the claims comported with applicable federal law.  *See* Section III.E.  Based on those conclusions, the Court further finds that the state appellate court's resolution of Applicant's cumulative error claim was also consistent with federal law. Claim 6 therefore will be dismissed.

## E.  Claims Seven through Fourteen

In claims seven through fourteen, Applicant asserts the ineffective assistance of trial counsel.

To prevail on a claim of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if

Applicant's claim fails on one. *Id.* at 697.

### 1.   Claim Seven

For his seventh claim, Applicant asserts that trial counsel was ineffective by failing to adequately litigate a Fourth Amendment claim.  The exhausted portions of this claim are Applicant's allegations that counsel failed to establish that the testifying officer committed perjury with regard to his reason for being at Applicant's house; failed to present police reports; and, failed to adequately investigate the issue.  Applicant has procedurally defaulted the portion of his claim asserting that counsel was ineffective in failing to attack the search warrant. (*See* ECF No. 16, at 8-9).  Under *Martinez*, Applicant's lack of counsel in the state post-conviction proceeding will excuse his procedural default if his allegation is "substantial." 132 S.Ct. at 1318.  A claim that "does not have any merit or . . .  is wholly without factual support" is not substantial.  *Id.* at 1319.

### a.  exhausted portions of claim seven

The Court first addresses Applicant's allegations that defense counsel failed to establish that the testifying officer committed perjury with regard to his reason for being at Applicant's house; failed to present police reports; and, failed to adequately investigate the issue.  Specifically, Applicant contends that counsel should have investigated and presented evidence to rebut the police officer's testimony that the officers were at his house to "check on the welfare of a female who had allegedly been involved in a verbal altercation with a man with a bat." (ECF No. 1, at 8).  Applicant maintains that this testimony was false because the woman "had been picked up by police and transported to Colorado West Mental Health, prior to officers coming to

[Applicant's] house to check on her welfare."  (*Id.*).

The Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at

3), and rejected Applicant's claim on the following grounds:

> Failure to present witness testimony or other evidence will not
> support a claim of ineffective assistance of trial counsel if the defendant is
> unable to demonstrate prejudice. *See People v. Dillard*, 680 P.2d 243, 245
> (Colo. App. 1984).

> On direct appeal, the division in *Hoeck I* concluded that [Applicant]
> had no reasonable expectation of privacy in the conversation recorded by
> officers. The division noted, among other things, that the officer
> approached [Applicant's] house to investigate a verbal disturbance; the
> argument could be heard twenty-five yards away from the house; the gate
> to the yard was open; and, as he approached the front door, the officer
> could hear that the argument or conversation involved narcotics. *See
> Hoeck I.*

> [Applicant] argues that his counsel should have presented evidence
> that at the time the officers approached the house, they knew that a
> female who had been involved in the disturbance had already left the
> residence. We note, however, that the officers could have investigated
> even if they knew that a female had left. *See People v. Baker*, 813 P.2d
> 331, 333 (Colo. 1991) (police do not infringe on an occupant's privacy
> rights by knocking on the door of a residence for the purpose of
> investigating a crime).

> Further, in rejecting the claim, the trial court concluded that it could
> discern no prejudice from the purported failure to introduce such evidence.
> The court reasoned that "[t]he mere fact that the female involved in the
> initial disturbance had left is irrelevant."

> We agree, and thus, the additional information would not have
> changed the outcome of the suppression hearing.

(*Hoeck II*, ECF No. 12-9, at 4-5).

The state appellate court's decision was a reasonable application of *Strickland*.

The evidence Applicant wanted counsel to present at the suppression hearing was not

relevant to the issue of whether the police had a legitimate reason for being at the

premises, which was to investigate a report of a verbal disturbance. (*See* ECF No. 12-4, at 2). Moreover, Applicant does not point to any evidence in the state court record to show that the officers who responded to the disturbance were aware that the woman had left the residence. Absent such knowledge, the evidence would have no impeachment value. Accordingly, the exhausted portions of claim seven are without merit and will be dismissed.

### b. procedurally defaulted portion of claim seven

Applicant also contends that trial counsel was ineffective in failing to challenge the search warrant. He asserts that "[p]olice used false statements to obtain the no-knock warrant when they stated that [he] had an outstanding warrant with an armed and dangerous caution. Defense counsel could easily have read the police reports and found that this was a false statement." (ECF No. 1, at 11). As discussed above, this allegation is procedurally barred unless it is substantial (meritorious).

A search warrant that contains false statements must be voided if: (1) the statements were made knowingly and intentionally, or with reckless disregard of the truth; and, (2) without the statements the corrected affidavit does not support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008).

The alleged false statements were relevant only to justify the no-knock entry. (State Court R., Court File, at 37-38). The exclusionary rule does not apply to a violation of the knock-and-announce rule. *See Hudson*, 547 U.S. at 594. Because Applicant has failed to demonstrate that the officer's affidavit did not support a finding of

probable cause for the search, the defaulted portion of claim seven lacks merit and will be dismissed as procedurally barred.

### 2.   Claim eight

In claim eight, Applicant asserts that trial counsel was ineffective in failing to investigate his competency.  In support, he alleges that as a result of being physically assaulted by three adult males on July 21, 2007, he suffers from psychological conditions, including short-term memory loss, sleep disorder, poor vision in both eyes, severe anxiety, post-traumatic stress disorder (PTSD), post-concussion syndrome, and agoraphobia.  (ECF No. 1, at 11).

A criminal defendant has a federal due process right not to be tried while mentally incompetent.  *Drope v. Missouri*, 420 U.S. 162, 172 (1975).  A defendant is competent to stand trial if he has (1) "a rational as well as factual understanding of the proceedings against him," and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of understanding."  *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *see also Godinez v. Moran*, 509 US 389, 396 (1993).  Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial, as well as defense counsel's assessment, are all relevant in assessing competency.  *See Drope*, 420 U.S. at 180; *Medina v. California*, 505 U.S. 437, 450 (1992).  *See also United States v. Cornejo–Sandoval*, 564 F.3d 1225, 1234-35 (10th Cir. 2009).

In *Hoeck II*, the Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at 3), and rejected Applicant's claim on the following grounds:

Next, we reject [Applicant's] claim that his trial counsel was

26

ineffective for failing to investigate [Applicant's] competency to stand trial.

The law presumes that a defendant is competent to stand trial, and thus, the burden to prove incompetency rests with the accused. *People v. Palmer*, 31 P.3d 863, 866 (Colo. 2001). A defendant's competence is a question of fact, and the trial court's ruling is reviewed for an abuse of discretion. *See id.* at 865-66.

Here, in his postconviction filings, [Applicant] complains of short-term memory loss, anxiety, post-traumatic stress disorder (PTSD), post-concussive syndrome, agoraphobia, and other conditions, which he claims resulted from a physical assault that occurred prior to his arrest. He describes an incident in which he could not assist or cooperate with counsel, but instead ran in panic from a conference room. However, he does not claim that the inability to cooperate and assist persisted beyond this incident. Finally, he makes a bare assertion that he was "unable to testify or to confront adverse witnesses" as a result of his PTSD.

The trial court rejected the claim, finding that the record conclusively showed that [Applicant] was competent to stand trial. The court concluded that [Applicant's] pro se filings and his participation in court hearings demonstrated that he understood the nature of the proceedings and was fully capable of assisting in his defense. *See id.* at 870 (concluding that the record showed the defendant was able to understand the proceedings and assist in his defense, despite claims of amnesia); *People v. Price*, 240 P.3d 557, 563 (Colo. App. 2010) (trial court was under no duty to suspend proceedings and determine the defendant's competency where counsel failed to establish a "bona fide doubt" as to the defendant's competency).

[Applicant] did not allege facts that show that he was incapable of understanding the nature and course of the proceedings against him, of participating or assisting in his defense, or of cooperating with his defense counsel. *See Price*, 240 P.3d at 561 (stating competency standard). Under these circumstances, the trial court did not err in rejecting his claim.

(ECF No. 12-9, at 5-7).

In his federal Application, Applicant relies heavily on injuries he sustained in July

2007, approximately one year before his trial. (ECF No. 1, at 1; ECF No. 12-1, at 8).

However, defense counsel and the state trial court were able to observe Applicant

during the several months leading up to trial, and, based on these observations, as well

as Applicant's *pro se* filings, it was reasonable for the Colorado Court of Appeals to conclude that Applicant "understood the nature of the proceedings and was capable of assisting with his defense."  (ECF No. 12-9, at 7).  Further, the single, isolated incident where Applicant ran out of the courtroom in a panic while meeting with counsel is not, by itself, sufficient to call into question his competency.

In addition, Applicant did not present any medical evidence to defense counsel at or before trial that would have alerted counsel to an issue concerning Applicant's competency.  "The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent . . . .".  *See Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995).  The cases upon which Applicant relies either do not support his claim or are factually distinguishable.  *See United States v. Brown*, 326 F.3d 1143, 1148 (10th Cir. 2003) (concluding that expert testimony failed to establish how defendant's PTSD was related to, or tended to negate the specific intent element of the charged crime); *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990) (concluding that counsel was ineffective in failing to investigate the defendant's competency to enter a guilty plea where counsel was aware that the defendant had been committed previously to mental institutions, but did not request a psychiatric evaluation or conduct any other investigation); *Becton v. Barrett*, 920 F.2d 1190 (4th Cir. 1990) (same); *Williamson v. Ward*, 110 F.3d 1508, 1518 (10th Cir. 1997) (concluding that defense counsel should have pursued a competency determination where counsel "knew of his client's history of mental problems, knew that he was being medicated, perhaps over-medicated, observed his client's bizarre behavior, knew that he had previously been determined incompetent, and knew that he had been awarded disability benefits on the basis of his

mental condition").

Applicant has failed to rebut the state courts' factual findings that he was competent to stand trial, and, therefore, did not suffer any prejudice as a result of trial counsel's failure to investigate his competency. *See* 28 U.S.C. §2254(e)(1); *Huricks v. Thaler*, No. 08-51050, 417 F. App'x 423, 428 (5th Cir. March 11, 2011) (unpublished) (concluding that habeas petitioner did not establish prejudice resulting from his trial counsel's alleged failure to investigate his competency where petitioner failed to rebut state courts' factual findings that he was able to consult with his lawyer with a reasonable degree of rational understanding, and that petitioner had a rational and factual understanding of the proceedings based on petitioner's participation in court proceedings). The Court finds that the state appellate court's determination of Applicant's claim comported with *Strickland* and was reasonable based on the evidence presented in the state court proceedings. Applicant therefore cannot prevail on claim eight.

### 3. Claim nine

For his ninth claim, Applicant contends that trial counsel was ineffective in failing to consult with expert witnesses concerning his competency. In support of his claim, Applicant alleges:

> [U]pon being sentenced to the department of corrections, [Applicant] was finally able to get the medical and mental health attention he had been seeking. Medical and health experts would have testified that [he] was not able to assist in his own defense, and unable to take the stand in his own defense. They would also have testified that [his] injuries caused him to be unable to think rationally or exercise adult judgment and that he lacked the culpable mental state of knowingly, for the required mens rea of the offense. Medical and mental health records would have proved that [he] suffered from these issues and that he was not competent to stand trial or

29

at the time of the alleged offenses.

(ECF No.1, at 13).

However, in presenting his claim to the state courts, Applicant did not identify any

mental health experts that would have supported his claim of incompetency.  Applicant

made the following contention in his opening brief on appeal in the state post-conviction

proceeding:

> [Trial counsel] was made fully aware of [Applicant's] physical condition
> and on-going psychological trauma, however, he did not consult with any
> expert psychiatrists or neurologists for [Applicant's] defense in relation to
> his psychological ability to stand trial under the conditions he continued to
> suffer from. . . . At the time of occurrence of the alleged crimes in this
> case, [Applicant] suffered from psychological disorders of PCS, PTSD and
> Agoraphobia, all of which are clinically recognized psychological disorders
> which involve a person's reaction to severe stresses and physical
> traumas.

(ECF No. 12-8, at 10).

The Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at

3), and rejected the ineffective-assistance-of-counsel claim based on the following

reasoning:

> [Applicant] next contends that his counsel was ineffective for failing
> to consult with an expert concerning his post-concussive syndrome,
> PTSD, and agoraphobia. We disagree.

> Failure to employ an expert witness will not support a claim of
> ineffective assistance of trial counsel if the defendant is unable to
> demonstrate prejudice. *See Dillard*, 680 P.2d at 245. Whether to call an
> expert witness is generally a tactical decision within the discretion of trial
> counsel. *See People v. Bradley*, 25 P.3d 1271, 1275-76 (Colo. App.
> 2001).

> Here, [Applicant] argues that, without consulting an expert, counsel
> was "unable to rationally determine technical and evidentiary strategy" or
> to "properly prepare for cross examination of the prosecution's witnesses,
> or [prepare] for presentation of rebuttal of physical evidence."  However,

30

he provides no facts or context for these assertions.

> The court rejected the claim. On appeal, [Applicant] does not explain how consultation with an expert would have changed the result of any proceeding. As such, there is no showing of prejudice from counsel's purported failure to consult an expert.

(*Hoeck II*, ECF No. 12-9, at 7-8).

The state appellate court's decision was consistent with *Strickland.* As discussed in Section III.E.2, *supra*, the fact that Applicant suffers from certain psychological disorders does not necessarily render him incompetent to stand trial. *See Miles*, 61 F.3d at 1472.  Applicant does not allege that he informed counsel, at or before trial, of the name of any mental health provider who had questioned Applicant's mental competency.  Applicant's reliance on the purported opinions of prison mental health staff, which were not made known to the state courts, do not afford him a basis for federal habeas relief.  *See Cullen*, 131 S.Ct. at 1398 (stating that "evidence introduced in federal court has no bearing on § 2254(d)(1) review").  And, the state courts' findings that Applicant's participation in court hearings and his *pro se* pre-trial filings demonstrated that he understood the nature of the proceedings and was fully capable of assisting in his defense was reasonable in light of the evidence before the state courts. Finally, Applicant's own statements, made during the tape-recorded conversation with his roommate, established his knowing possession of cocaine and intent to distribute. Claim nine thus will be dismissed.

### 4.    Claim ten

In claim ten, Applicant asserts that trial counsel was ineffective by failing to have the drugs independently weighed and tested.  He maintains that "[i]ndependent testing

could have shown that the weights were incorrect, and that the substances were not a controlled substance." (*Id.*).  Applicant has procedurally defaulted the portion of his claim addressing the nature of the substance.  (ECF No. 16, at 13).

In *Hoeck II*, the Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at 3), and analyzed the claim as follows:

> [Applicant] maintains that trial counsel was ineffective for failing to reweigh and independently test the cocaine found during the search of his home. We disagree.

> [Applicant] does not state what such testing would reveal. And while he argues that the police recovered only cocaine "residue," a division of this court has already concluded that there was sufficient evidence to support the verdict. *See Hoeck I.* Further, the trial court concluded that, because of the overwhelming evidence of [Applicant's] intent to sell drugs, any failure to have the drugs reweighed or retested did not result in prejudice. *See Dunlap v. People*, 173 P.3d 1054, 1092 n.41 (Colo. 2007) (no prejudice found in light of overwhelming evidence of guilt).

> On appeal, [Applicant] presents no argument regarding the trial court's conclusions, but only repeats the assertions he made in his motion. Thus, [Applicant] has not shown prejudice from any failure by counsel to reweigh or test the cocaine.

(ECF No. 12-9, at 8-9).

Under § 18-18-405(2), C.R.S., it is unlawful for any person knowingly to manufacture, dispense, sell, or distribute, or to possess with intent to manufacture, dispense, sell, or distribute, a controlled substance.  The amount of the controlled substance is not an element of the offense.  However, "where there is not evidence of a usable quantity, the People must present other evidence regarding the defendant's knowledge to justify the jury's consideration of that element." *Richardson*, 25 P.3d at 58.  In this case, there was significant evidence of Applicant's knowledge, including: (1) his roommate's testimony that the voices on the recording were his and Applicant's; (2)

Applicant's statements in the recording indicated his intent to sell cocaine; and, (3) the officers' seizure of numerous items commonly used in distributing narcotics, including coin baggies, digital scales, a crack pipe, straight razors, pieces of paper with list of phone numbers, and various items containing cocaine residue found throughout [Applicant's] residence.  Applicant does not explain what the reweighing would have shown, or how it would have refuted the other evidence of guilt, so as to demonstrate prejudice resulting in counsel's alleged shortcomings.  Accordingly, the Court finds that the state appellate court's rejection of Applicant's ineffective assistance of counsel allegations was a reasonable application of *Strickland*.

The Court further finds that Applicant's procedurally defaulted allegation in claim 10 that "[i]ndependent testing could have shown . . . that the substances were not a controlled substance" (ECF No. 1, at 15) lacks merit because the allegation is conclusory.  Conclusory assertions are insufficient to support an ineffective assistance of counsel claim.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*).   As such, the procedurally barred portion of claim 10 is not substantial.  *See Martinez*, 132 S.Ct. at 1318.

Claim ten will be dismissed in its entirety.

### 5.    Claim Eleven

In claim eleven, Applicant asserts that trial counsel was ineffective by failing to have an expert review the recording of his conversation with his roommate. Specifically, Applicant contends that counsel failed to obtain a distinguishing voice exemplar and failed to challenge "the reliability of the recording, the chain of custody

33

and the destruction of the original recording." (*Id.*).  Applicant has procedurally defaulted

the portion of his claim challenging the reliability of the record and chain of custody.

(ECF No. 16, at 14-15).

The Colorado Court of Appeals applied the *Strickland* standard (ECF No.

12-9, at 3), and rejected this claim on the following grounds:

> [Applicant] next argues that his counsel was ineffective for failing to submit the audio recording for an independent voice analysis. In support, he claims that the prosecution relied on a copy of the recording, and that no evidence was presented to demonstrate that it was his voice on the recording. We are not persuaded.
>
> [Applicant's] roommate testified at trial that both his voice and [Applicant's] voice were on the recording. [Applicant] does not contend that a voice expert could have contradicted this testimony. Further, the police could have gotten their search warrant based on the recording regardless of whose voices were recorded.
>
> Under the circumstances, [Applicant] has not shown that a voice analysis would have changed the outcome of the case.

(*Hoeck II*, ECF No. 12-9, at 9-10).

The Court finds that the state appellate court's analysis was consistent with

*Strickland*.  Applicant has never alleged that a voice analysis would show that the

second voice on the tape belonged to someone else.  As such, his allegation is

conclusory and fails to demonstrate that he was prejudiced as a result of counsel's

alleged inadequate performance.  *See Cummings,* 506 F.3d 1233-34; *see also Boyle v.*

*McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (prejudice not shown from counsel's

failure to call witnesses where applicant could not show what helpful testimony the

witnesses would have provided).

Applicant's procedurally defaulted allegation that counsel was ineffective for

failing to challenge the chain of custody of the recording of Applicant's statements is not substantial, under *Martinez*, because Applicant does not explain specifically how the chain of custody was deficient. Again, conclusory allegations cannot support an ineffective assistance of counsel claim. *See id.*; *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments").

Claim Eleven will be dismissed in its entirety.

### 6. Claim Twelve

In claim twelve, Applicant contends that trial counsel was ineffective by failing to explore other viable defenses. Specifically, Applicant maintains that counsel did not investigate Applicant's state of mind and competency, alibi and corroborating defense witnesses, and alternate suspects. (ECF No. 1, at 16). The Court has concluded that the portion of claim twelve challenging counsel's failure to explore alternate suspects is procedurally barred.[1] (ECF No. 16, at 15-16).

### a. exhausted allegations

The Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at 3), and rejected some of Applicant's allegations on the following grounds:

> [Applicant] contends that his attorney failed to investigate and present a defense that (1) he had been physically assaulted before his arrest and suffered from psychological trauma, (2) he had been to church and had made a telephone call on the night the officers arrived at his

---

[1]In the February 3, 2014 Order to Dismiss in Part, the Court mistakenly stated that Applicant failed to exhaust state remedies, and procedurally defaulted, his allegation that counsel failed to explore alibi witnesses. (ECF No. 16, at 15-16). The February 3, 2014 Order is corrected to reflect that Applicant exhausted his claim concerning counsel's failure to investigate alibi witnesses, but procedurally defaulted his claim that counsel failed to investigate alternate suspects.

home, and (3) his roommate initially told police that the drugs and drug paraphernalia did not belong to [Applicant].

The trial court concluded that [Applicant] had not shown that these facts would have made a difference at trial in light of the overwhelming evidence of [Applicant's] guilt. *See People v. Barefield*, 804 P.2d 1342, 1346 (Colo. App. 1990) (court may consider strength of the case in determining whether there was a reasonable probability of producing a different result at trial).

We agree with the court's assessment, and conclude that [Applicant] has not shown prejudice from his counsel's choices.

(*Hoeck II*, ECF No. 12-9, at 10-11).

The Court fully addressed Applicant's allegations that counsel failed to investigate Applicant's state of mind and competency in the discussion of claims 8 and 9 and concluded that the allegations lack merit.  Further, Applicant's assertion that defense counsel failed to investigate corroborating defense witnesses is without merit because Applicant's roommate testified for the defense at trial that the drug paraphernalia in the house belonged to him, a fact that he told police officers at the time of his arrest.  (State Court R., 7/17/08 Trial Tr., at 147-150).  Applicant has not identified any other favorable defense witnesses, or the substance of their purported testimony.  Moreover, Applicant has failed to show how the alleged deficiencies by counsel prejudiced him in light of the evidence seized from Applicant's residence and Applicant's own inculpatory statements in the tape-recorded conversation.  *See Peterson v. Timme*, 509 F. App'x 830, 932 (10th Cir. Feb. 6, 2013) (unpublished) (rejecting the petitioner's claim that trial counsel's failure to call and subpoena witnesses and surveillance tapes constituted ineffective assistance of counsel because petitioner did not assert any specific exculpatory evidence that would have changed the outcome of his

36

proceedings).  Accordingly, the Court finds that the state appellate court's resolution of his claim was a reasonable application of *Strickland*.

### b.  procedurally defaulted allegation

The Court further finds that Applicant's procedurally defaulted contention that counsel was ineffective in failing to investigate an alternative suspect defense is without merit.  Applicant alleges that "counsel knew that there was defense evidence in the form of . . . alternate suspects, yet counsel did not investigate them or present them on behalf of his client, which the trial record shows."  (ECF No. 1, at 16).

In Colorado, "[a] defendant may prove his innocence by establishing the guilt of an alternate suspect."  *People v. Perez*, 972 P.2d 1072, 1074 (Colo. App. 1998).  "However, evidence that another person had an opportunity to commit the crime for which defendant is being tried is not sufficient.  The defendant must prove that the other person committed some act directly connecting that person with the charged crime."  *Id.*

Applicant does not identify an alternate suspect or specify an act committed by the alternate suspect directly connecting that individual to the crime.  As such, Applicant's allegations are conclusory and, consequently, insubstantial under *Martinez*.

Claim twelve will be dismissed in its entirety.

### 7.    Claim thirteen

For claim thirteen, Applicant asserts that trial counsel was ineffective by failing to apprise him of the progress of the case.  Specifically, Applicant claims that counsel failed to review discovery with Applicant, who because of a vision impairment,

was unable to read; and, failed to discuss viable defenses, alibi witness statements, trial strategy and trial readiness with Applicant.  (ECF No. 1, at 17).

In *Hoeck II*, the Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at 3), and addressed this claim as follows:

> [Applicant] maintains that counsel failed to properly communicate with him regarding trial strategy and other matters prior to trial. Further, he complains that the trial court erred in failing to appoint new counsel to represent him in a hearing on the issue when the matter was brought to the court's attention.
>
> The trial court rejected the claim, noting that it had already addressed the issue in a hearing held before trial. The court noted that, following the hearing, the court had concluded that there was no breakdown of communication and that [Applicant] simply disagreed with counsel's tactics and trial strategy. The court further rejected [Applicant's] claim that it should have appointed additional counsel to assist him at his pretrial hearing.
>
> On appeal, [Applicant] fails to indicate how the purported communication problems impacted the case, other than to make a conclusory statement that the communication problems affected the trial's fairness.
>
> Under these circumstances, the court did not err in rejecting the claim.

(ECF No. 12-9, at 12-13).

The state appellate court's determination that Applicant failed to demonstrate prejudice as a result of counsel's alleged deficient performance comports with *Strickland*.  Again, Applicant's conclusory assertion that "[t]he issue of communications between [Applicant] and his counsel did affect the fairness of his trial," (ECF No. 1, at 18), is insufficient to demonstrate that the outcome of his trial would have been different absent the alleged communication problems, or if he had been appointed substitute counsel.  *See Cummings,* 506 F.3d 1233-34; *Fisher*, 38 F.3d at 1147.  Claim thirteen

will be dismissed.

### 8.    Claim fourteen

In claim fourteen, Applicant contends that trial counsel was ineffective by

failing to interview and present character witnesses at the sentencing hearing.

The Colorado Court of Appeals applied the *Strickland* standard (ECF No. 12-9, at

3), and rejected this claim on the following grounds:

> [Applicant] argues that his counsel was ineffective at sentencing
> because he did not present any character witnesses and did not prepare
> [Applicant] for allocution. We are not persuaded.
>
> In rejecting [Applicant's] argument, the [sentencing] court stated:
>
>> Here, the Court imposed a sentence within the aggravated
>> range because [Applicant] had nine prior felony convictions
>> and committed another felony while he was out on bond in
>> this case. Even if defense counsel had called character
>> witnesses to testify on [Applicant] behalf, it is highly unlikely
>> that the Court would have imposed a lesser sentence. As
>> such, the failure to call these witnesses did not result in
>> prejudice.
>
> On appeal, [Applicant] does not specifically identify any character
> witnesses who would have testified on his behalf. Further, the prosecution
> had already agreed to dismiss habitual charges against [Applicant]. The
> charges were dismissed because of [Applicant's] cooperation with law
> enforcement in connection with the assault of another individual, and the
> prosecution opposed further sentencing concessions because [Applicant]
> had a lengthy criminal record.
>
> The court, in sentencing [Applicant], considered defense counsel's
> arguments regarding [Applicant's] injuries, his cooperation with law
> enforcement, his efforts to help others, and the small amount of drugs
> actually found in the search of his home. However, the court noted the
> serious nature of the charges, the circumstances of the crime, the
> compelling evidence of defendant's guilt, and [Applicant's] extensive
> criminal history, which the court described as "the biggest prior record I've
> seen with regard to felony convictions." The court also noted that

39

> [Applicant] would have faced a forty-eight-year sentence had he been charged as an habitual offender.
>
> Further, contrary to any suggestion that [Applicant] was denied his right of allocution, the sentencing transcript reveals that [Applicant] spoke about his family, his plans to finish his college education, the care he had given to his children, his efforts to help others, and his religious convictions. [Applicant] does not indicate what additional comments he would have made when addressing the court had he been prepared by counsel.
>
> Under the circumstances, [Applicant] has not shown that his counsel's purported inadequate representation at sentencing resulted in any prejudice to [Applicant].

(*Hoeck II*, ECF No. 12-9, at 12-13).

The state appellate court's factual findings are presumed correct, are supported by the record of the sentencing proceeding (*see generally* State Court R., 7/18/08 Sentencing Tr.), and are unrebutted by Applicant.  Because Applicant does not identify any character witnesses that he would have called, or the substance of the witness's testimony and how it would have resulted in a reduced sentence in light of his extensive felony record, his claim is conclusory.  *See Cummings,* 506 F.3d 1233-34; *Fisher*, 38 F.3d at 1147; *see also Boyle*, 544 F.3d at 1138.  Claim fourteen will be dismissed.

**F.    Claim 18**

For his eighteenth and final claim, Applicant asserts that his trial counsel was constitutionally ineffective due to a conflict of interest regarding Applicant's religious beliefs.  Specifically, Applicant contends that "counsel refused to see [him] on any other day than the weekly Sabbath, even after he was told that this was a day [that he] could not work, nor have anyone do any manner of work for him, in violation of the *First Amendment*."  (ECF No. 1, at 21).  Applicant procedurally defaulted this claim in the

state courts and must therefore show that the claim is substantial to excuse the

procedural bar.  *See Martinez*, 132 S.Ct. at 1318.

In his opening brief on appeal in *Hoeck II*, Applicant argued the following:

> This conflict arose over Mr. Esplin's refusal to go to the county jail to meet
> with Mr. Hoeck except between Friday sunset and Saturday sunset, which
> Mr. Hoeck did specifically inform Mr. Esplin were holy days in which Mr.
> Hoeck had to observe and could not work on, nor have anyone work for
> him on. He asked Mr. Esplin not to come meet with him between Friday at
> sunset through Saturday at sunset, however, Mr. Esplin disregarded
> Hoeck's request and his First and Fourteenth Amendments constitutional
> rights of freedom to practice his religious beliefs and continued to attempt
> to see Mr. Hoeck from Friday sunset to Saturday sunset. Mr. Hoeck
> refused to meet with Mr. Esplin and as a result Mr. Hoeck was provided
> IAC and denied conflict-free counsel by Mr. Esplin due to his refusal to
> meet with and interview Mr. Hoeck at any other time. Mr. Esplin used this
> conflict of interest to undermine the attorney-client relationship by not
> properly investigating Mr. Hoeck's case, defenses, potential witnesses,
> and allowed this conflict of interest with Mr. Hoeck's religious beliefs as an
> issue to deny Mr. Hoeck the loyal and zealous advocacy owed.

(ECF No. 12-8, at 22).

The state court record reflects that before trial, Applicant filed *pro se* a motion

requesting new counsel and the state trial court held a hearing.  During the hearing, the

court invited Applicant to explain all of the bases for his motion, but Applicant did not

mention that counsel insisted on meeting with Applicant only on a holy day.  (State

Court R., 2/22/08 Hrg. Tr.).  Further, the state court record demonstrates that counsel

met with Applicant at least once before trial.  In Applicant's *pro se* motion seeking new

counsel, Applicant stated, "I told my attorney *when he went over discovery with me* that

police violated the law and he said they didn't without checking into it."  (State Court R.,

Court File, at 20) (emphasis supplied).  In addition, during the colloquy between

Applicant and the trial court during the hearing on Applicant's motion, Applicant told the

court: "I know there's witnesses on this next one [i.e. trial][2] coming up *and he said to me when he visited me* that he didn't remember hearing about these guys, and I don't even know if he's had them interviewed or anything."  (State Court R., 2/22/08 Hrg. Tr., at 7) (emphasis supplied).

The federal courts of appeal have eschewed any requirement that counsel meet with a criminal defendant a minimum number of times before trial.  *See, e.g., United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) (there is no established "minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel."); *Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005)(same); *Schwander v. Blackburn*, 750 F.2d 494, 499-500 (5th Cir. 1985) (reiterating that "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel.") (internal quotation marks and citation omitted); *see also Jones v. Conway,* 442 F.Supp.2d 113, 126 (S.D.N.Y.2006) (noting that "there is no set rule for the number of times counsel must meet with a defendant," and that the petitioner failed to establish prejudice because the record revealed "that petitioner's trial counsel was active and effective in presenting a strong defense on petitioner's behalf").  The real issue is whether trial counsel effectively prepared the defendant for trial.  *See United States v. Chavez–Marquez*, 66 F.3d 259, 262 (10th Cir. 1995).

Applicant has not pointed to any facts to show how the outcome of his trial was

---

[2]Respondents state that the same counsel represented Applicant in a previous trial in 07CR1604, and Applicant complained about counsel's not investigating witnesses in that case.  (ECF No. 19, at 52 n.3).  *See also* State Court R., 2/22/08 Hrg Tr., at 3, 5, and 8.

affected by counsel's unavailability to meet with him on days other than a holy day.

Further, Applicant's allegations in his opening brief to the state appellate court that

counsel failed to properly investigate Applicant's case, defenses and potential witnesses

and denied "the loyal and zealous advocacy owed" to him are conclusory. *See*

*Cummings,* 506 F.3d 1233-34; *Fisher*, 38 F.3d at 1147; *see also Boyle*, 544 F.3d at

1138.

Finally, Applicant's claim does not appear to implicate the First Amendment.  The

First Amendment, made applicable to the states by the Fourteenth Amendment, bars

the state from making laws prohibiting the free exercise of religion. U.S. Const. amends.

I and XIV § 1.  Applicant has not provided any authority to support the proposition that

court-appointed counsel's unavailability to meet with a criminal defendant on days other

than a holy day violates the defendant's First Amendment free exercise rights.  Indeed,

the courts have held in other contexts that the conduct of court-appointed defense

counsel is not state action regulated by the First and Fourteenth Amendments.  *See*

*Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that private counsel

appointed by court to represent an indigent litigant is not a state actor subject to liability

under 42 U.S.C. § 1983); *see also see also Ellibee v. Hazlett,* No. 04-3128, 122 F.

App'x. 932, 934 (10th Cir. Dec.13, 2004) (unpublished) ("Neither public defenders

performing their 'traditional functions as counsel to a defendant in a criminal proceeding'

nor private attorneys act under color of state law.") (quoting *Polk County,* 454 U.S. at

325).

The Court finds no merit to claim eighteen.  The claim therefore will be dismissed

as procedurally barred.

43

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), filed by David B. Hoeck, on September 19, 2013, is DENIED and this action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505  appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 21st day of April, 2014.

BY THE COURT:

_____

William J. Martinez
United States District Judge